UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA ELENA GARCIA,<br><br>        Plaintiff,<br><br>    v.<br><br>KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY,<br><br>        Defendant. | Case No. 1:21-cv-01043-ADA-HBK<br><br>FINDINGS AND RECOMMENDATIONS TO GRANT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, DENY DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT, AND REMAND CASE TO THE COMMISSIONER OF SOCIAL SECURITY[1]<br><br>(Doc. Nos. 18, 19)<br><br>FOURTEEN-DAY OBJECTION DEADLINE |

Maria Elena Garcia ("Plaintiff"), seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for supplemental security income and disability insurance benefits under the Social Security Act. (Doc. No. 1). The matter is currently before the undersigned on the parties' briefs, which were submitted without oral argument. (Doc. Nos. 18, 19). For the reasons stated, the undersigned RECOMMENDS granting Plaintiff's motion for summary judgment, denying the Commissioner's cross-motion for summary judgment, and remanding for further administrative proceedings.

---

[1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302(c)(15) (E.D. Cal. 2022).

## I. JURISDICTION

Plaintiff filed for disability insurance benefits and supplemental security income on August 23, 2017. (AR 234-48). She alleged a disability onset date of March 20, 2105 in both applications. (*Id.*). Benefits were denied initially (AR 60-91), and upon reconsideration (AR 93-130). A hearing was conducted before an Administrative Law Judge ("ALJ") on March 5, 2020. (AR 41-58). Plaintiff was represented by counsel and testified at the hearing. (*Id.*). On July 23, 2020, the ALJ issued an unfavorable decision (AR 20-40) and on November 3, 2020, the Appeals Council denied review. (AR 6-13). The matter is before the Court under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

## II. BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and Commissioner. Only the most pertinent facts are summarized here.

Plaintiff was 50 years old at the time of the hearing. (AR 45). She completed tenth grade. (AR 46). Plaintiff testified that she lives with her husband and three adult children. (AR 46). She has work history as a school cafeteria cook and injured her left hand while at work. (AR 46-47, 55). Plaintiff testified that she has pain "all the time" in her left hand and wrist, right hand, and neck. (AR 47, 49). She has depression, anxiety, and tearful episodes. (AR 50). Plaintiff reported that she can do household work for 3 to 5 minutes, and then she has to take a 20 to 30 minute break. (AR 52-53). She can walk for about 20 to 30 minutes, she can sit for 30 minutes at a time, she can lift a maximum of 10 pounds, and she cannot repeatedly reach overhead or in front of her with her left arm. (AR 53-54).

## III. STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a

conclusion." *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).  Further, a district court will not reverse an ALJ's decision on account of an error that is harmless. *Id*.  An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. (quotation and citation omitted).  The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## IV. FIVE-STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(b),

416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§

404.1520(a)(4)(v), 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560I(2), 416.960I(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

### V.   ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since March 20, 2015, the alleged onset date. (AR 28). At step two, the ALJ found that Plaintiff has the following severe impairments: DeQuervain's syndrome, left carpal tunnel syndrome, depression, myofascial pain, and cervical sprain. (AR 29). At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. (AR 29). The ALJ then found that Plaintiff has the RFC to

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can occasionally climb of [sic] ramps and stairs and cannot climb ladders, ropes, or scaffolds. She can occasionally stoop, kneel, crouch, and crawl; balancing is not limited. She can frequently handle, finger, and feel with the left non-dominant upper extremity, but cannot perform repetitive gripping or grasping. She must avoid concentrated exposure to working at unprotected heights and working around dangerous moving machinery. She can perform unskilled work.

(AR 31). At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. (AR 34). At step five, the ALJ found that considering Plaintiff's age, education, work

experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including cafeteria worker, office helper, and housekeeper. (AR 35). On that basis, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from March 20, 2015, through the date of the decision. (AR 36).

## VI.   ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her supplemental security income benefits under Title XVI of the Social Security Act and disability insurance benefits under Title II of the Social Security Act. (Doc. No. 1). Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ properly considered Plaintiff's subjective complaints; and

2. Whether the ALJ properly considered the medical opinion evidence.

(Doc. No. 18 at 10-16).

## VII.   DISCUSSION

### A. Symptom Claims

An ALJ engages in a two-step analysis when evaluating a claimant's testimony regarding subjective pain or symptoms. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). The ALJ first must determine whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id*. (internal quotation marks omitted). "The claimant is not required to show that his impairment could reasonably be expected to cause the severity of the symptom he has alleged; he need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir.

1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin*., 278 F.3d 920, 924 (9th Cir. 2002)).

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record" for two reasons: (1) they are unsupported by the objective evidence of record and (2) they are inconsistent with Plaintiff's daily activities. (AR 32-33).

The ALJ's entire finding regarding Plaintiff's daily activities consists of the following: "her functioning in relation to her physical symptoms is not as limited as alleged. The claimant testified that she sometimes takes 20 to 30 minute walks and can perform some household chores with breaks. She also reported no difficulties with self-care, in addition to being [sic] go shopping with her children sometimes." (*Id*.). Plaintiff argues this was not a clear and convincing reason to discount her symptom claims because her self-reported daily activities are consistent with her alleged limitations. (Doc. No. 18 at 15-16). The Court agrees. The ALJ may consider a claimant's activities that undermine reported symptoms. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). However, the Ninth Circuit has "repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison*, 759 F.3d at 1016; *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her [testimony] as to her overall disability.").

Here, in support of this finding, the ALJ generally cites to Plaintiff's hearing testimony that she could take 20 to 30 minutes walks, perform some household chores with breaks, perform self-care, and go shopping with her children "sometimes." (AR 32-33). However, the ALJ did not consider Plaintiff's testimony that she cooks and cleans with rest breaks and only when necessary, she has hard time opening jars and cutting vegetables, her daughter helps with housework, her children do all of the grocery shopping and she only accompanies them "sometimes," she spends most of her day laying down in her room, and she can do household work for 3 to 5 minutes before she needs to take a break for 20 to 30 minutes. (AR 48-52). As noted by Plaintiff, she "did not testify to an unimpaired ability to do household chores, self-care, and errands, but that she has limited ability to perform these tasks and frequently needs to rest and modify her activity level because of pain." (Doc. No. 18 at 16). The ALJ cited no evidence suggesting that the limited activities cited in the decision were performed by Plaintiff in a manner transferable to a work setting, particularly with regard to Plaintiff's need for regular breaks, nor did the ALJ describe activities that contradict her reported symptom claims. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Thus, this is not substantial evidence to support the ALJ's reasoning.

Furthermore, in considering Plaintiff's symptom claims, the ALJ must specifically identify the statements he or she finds not to be credible, and the evidence that allegedly undermines those statements. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). "To ensure that our review of the ALJ's credibility determination is meaningful, and that the claimant's testimony is not rejected arbitrarily, we require the ALJ to specify which testimony she finds not credible, and then provide clear and convincing reasons, supported by the evidence in the record, to support that credibility determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015) (noting the ALJ did not specifically identify any inconsistencies between the claimant's testimony and the record; rather, "she simply stated her non-credibility conclusion and then summarized the medical evidence supporting her RFC determination."). Here, the ALJ did not identify the specific testimony that he found not to be credible, nor did he offer explanations for why the cited evidence of Plaintiff's ability to perform basic activities of daily living for

1    limited periods of time undermines Plaintiff's symptom claims, particularly as to her difficulties

2    using her left hand and wrist.  Thus, the ALJ's finding that Plaintiff's daily activities were

3    inconsistent with her claimed limitations was not a clear and convincing reason, supported by

4    substantial evidence, to discount her symptom claims.

5          Second, the ALJ found Plaintiff's symptom claims are unsupported by "the objective

6    evidence of record," including, but not limited to, normal cervical range of motion, sensations,

7    5/5 motor strength, and reflexes; normal range of motion of the left upper extremity; no signs of

8    ulnar nerve irritation and "at times" negative Tinel's sign on the left; normal EMG of the left

9    upper extremity; and normal mental status examination findings "with her mood, affect, speech,

10   insight, judgment, thought content and thought processes." (AR 32).  However, regardless of

11   whether the ALJ erred in finding Plaintiff's symptom claims were not corroborated by objective

12   evidence, it is well-settled in the Ninth Circuit that an ALJ may not discredit a claimant's pain

13   testimony and deny benefits *solely* because the degree of pain alleged is not supported by

14   objective medical evidence.  *Rollins*, 261 F.3d at 857 (emphasis added))); *Bunnell v. Sullivan*, 947

15   F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989).  As

16   discussed above, the additional reason given by the ALJ for discounting Plaintiff's symptom

17   claims was not supported by substantial evidence.  Thus, because lack of corroboration by the

18   objective evidence cannot stand alone as a basis for rejecting Plaintiff's symptom claims, the

19   ALJ's finding is inadequate.

20         The Court concludes that the ALJ did not provide clear and convincing reasons, supported

21   by substantial evidence, for rejecting Plaintiff's symptom claims.  On remand, the ALJ must

22   reconsider Plaintiff's symptom claims.

23         **B. Medical Opinions**

24         Plaintiff additionally challenges the ALJ's findings regarding the medical opinions of state

25   agency psychological consultants G. Ikawa, M.D. and Leif Leaf, Ph.D.; psychological

26   consultative examiner Jacklyn L. Chandler, Ph.D.; and treating provider Tariq Mirza, M.D.  (Doc.

27   No. 18 at 10-13).  Because the ALJ's consideration of the medical opinion evidence is at least

28   partially dependent on a proper evaluation of Plaintiff's symptom claims, the Court declines to

address these challenges in detail here.

The Court does briefly note that the Ninth Circuit has held that in considering medical opinion evidence, the new regulatory framework displaces the longstanding case law requiring an ALJ to provide "specific and legitimate" or "clear and convincing" reasons for rejecting a treating or examining doctor's opinion. *Woods v. Kijakazi*, 32 F.4th 785 (9th Cir. 2022).  Nonetheless, in rejecting an examining or treating doctor's opinion as unsupported or inconsistent, an ALJ must still provide an explanation supported by substantial evidence. *Id*.  This means that the ALJ "must 'articulate ... how persuasive' [he or she] finds 'all of the medical opinions' from each doctor or other source ... and 'explain how [he or she] considered the supportability and consistency factors' in reaching these findings." *Id*. (citing 20 C.F.R. §§ 404.1520c(b), 404.1520(b)(2)).

Here, in considering the mental opinion evidence, the ALJ found the respective opinions were supported by the treatment notes reviewed by the state agency consultants, and the consultative examiner's own evaluation findings; however, the ALJ still found the opinions only "minimally" and "somewhat" persuasive based on the consistency factor, namely, that the opinions were inconsistent "with the evidence as a whole, which showed generally stable mental status findings," and "no longitudinal treatment with a mental health specialist."[2]  (AR 34).  As noted by Plaintiff, the ALJ relied on two mental status examinations to support this finding; (1) a single 2017 treatment note at "Regional Hand Surgery Associates" noting that Plaintiff was alert, oriented, in no acute distress and had normal affect and mood; and (2) a general reference to Dr. Chandler's own mental status examination, which also included findings, not considered by the ALJ as part of her assessment of the opinion evidence, that Plaintiff was unkempt and fatigued, had restricted affect and moderately dysphoric mood, was tearful, and had poor attention,

---

[2] Only as to the state agency psychological consultants, the ALJ also found "medical evidence of record does not support social interaction deficits.  In fact, the claimant has been advised to socialize more." (AR 34).  The ALJ fails to provide a citation to this "advice," nor does she explain how this evidence outlined in the state agency consultants' overview of the medical record is inconsistent with their own opinions that Plaintiff is moderately limited in social interaction.  (*See* AR 34, 66).  Finally, the ALJ briefly notes that "a reduction to unskilled work gives significant benefit of the doubt to the claimant's limitations." (AR 34).  In light of the need to reconsider Plaintiff's symptom claims and conduct a new sequential analysis including reassessment of the RFC, it is unnecessary for the Court to consider this argument.

1   concentration, memory, and calculations. (Doc. No. 18 at 13; AR 374, 419, 932-33). While the
2   lack of treatment with a mental health specialist is arguably a proper consideration when
3   evaluating the consistency of medical opinion evidence, the ALJ's reliance on the handful of
4   treatment records outlined above, without further explanation, likely does not rise to the level of
5   substantial evidence to support the rejection of all the mental opinion evidence. *See Woods*, 32
6   F.4th at 792; *Brown-Hunter*, 806 F.3d at 495 (a court "cannot substitute [the court's] conclusions
7   for the ALJ's, or speculate as to the grounds for the ALJ's conclusions. Although the ALJ's
8   analysis need not be extensive, the ALJ must provide some reasoning in order for [the court] to
9   meaningfully determine whether the ALJ's conclusions were supported by substantial
10  evidence."). Thus, particularly in light of the need to reconsider Plaintiff's symptom claims, as
11  discussed *supra*, the ALJ should reconsider the mental opinion evidence on remand.

12          Finally, as to physical opinion evidence, the ALJ found Dr. Mirza's opinion that Plaintiff
13  was limited to "a range of sedentary work with left hand manipulative limitations" unpersuasive.
14  (AR 33). Again, the ALJ seemingly acknowledged that the opinion was supported by Dr. Mirza's
15  own examination findings of tenderness and decreased grip strength, but nonetheless found it
16  unpersuasive because it was a "rendered with the intent of being a temporary assessment
17  measuring the claimant's functional mobility throughout treatment" and was "inconsistent with
18  the evidence as a whole, showing claimant had generally normal mobility, motility, and other
19  neurological signs." (AR 33-34). Plaintiff notes that Dr. Mirza treated Plaintiff for almost two
20  years and assessed temporary work restrictions twelve times during that period; thus, she argues
21  that "quantifying Dr. Mirza's work restrictions as temporary is misleading since they cover an
22  extended period of time and consistently limit the Plaintiff to a sedentary exertional level with
23  manipulative limitations." (Doc. No. 18 at 13). The Court agrees. In addition, as above, the ALJ
24  cites evidence largely from Dr. Mirza's own examination notes as support for the finding that Dr.
25  Mirza's opinion inconsistent with the "overall record," without explanation as to why "normal"
26  findings as to Plaintiff's cervical spine and upper extremity are inconsistent with Dr. Mirza's
27  opinion presumably based on findings of tenderness, weakness of grip and grasp on the left side,
28  positive Tinel and Phalen's test on the left side, and evidence of carpal tunnel syndrome, as

documented in those same examination notes and throughout the longitudinal record. (AR 397-98, 426-27, 601-02, 685 (noting range of motion in the left wrist is "terminally restricted"), 890, 941-42, 977-78).

On remand, the ALJ is instructed to reconsider Plaintiff's symptom claims and conduct a new sequential analysis, including a reassessment of the medical opinion evidence if necessary.

## VIII.   REMEDY

Plaintiff argues the Court should remand the case with instructions to award benefits. (Doc. No. 18 at 16). The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). An immediate award of benefits is appropriate where "no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed," *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988), or when the delay caused by remand would be "unduly burdensome[.]" *Terry v. Sullivan*, 903 F.2d 1273, 1280 (9th Cir. 1990); *see also Garrison*, 759 F.3d at 1021 (noting that a district court may abuse its discretion not to remand for benefits when all of these conditions are met). This policy is based on the "need to expedite disability claims." *Varney*, 859 F.2d at 1401. But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a claimant disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).

The Court finds that further administrative proceedings are appropriate. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103-04 (9th Cir. 2014) (remand for benefits is not appropriate when further administrative proceedings would serve a useful purpose). Here, the ALJ improperly considered Plaintiff's symptom claims, which calls into question whether the assessed RFC, and resulting hypothetical propounded to the vocational expert, are supported by substantial evidence. "Where," as here, "there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate." *Treichler*, 775 F.3d at 1101. Instead, the Court recommends this case be remanded for further proceedings.

On remand, the ALJ should reevaluate Plaintiff's symptom claims and all relevant medical opinions. The ALJ should conduct a new sequential analysis, reassess Plaintiff's RFC and, if necessary, take additional testimony from a vocational expert which includes all of the limitations credited by the ALJ.

Accordingly, it is **RECOMMENDED**:

1. Plaintiff's Motion for Summary Judgment (Doc. No. 18) be GRANTED.
2. Defendant's Cross Motion for Summary Judgment (Doc. No. 19) be DENIED.
3. Pursuant to sentence four of 42 U.S.C.§ 405(g), the Court REVERSE the Commissioner's decision and REMAND this case back to the Commissioner of Social Security for further proceedings consistent with this Order.
4. The district court direct the Clerk to enter judgment in favor of the Plaintiff, terminate any pending motions/deadlines, and close this case.

### **NOTICE TO PARTIES**

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within fourteen (14) days after being served with these findings and recommendations, a party may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

Dated:   June 28, 2023

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE